[No. 3715-1.   Division One.   April 25, 1977.]

MARY JO MORRISON, *Appellant,* v. EMMETT F.
MCKILLOP, ET AL, *Respondents.*

*Vaughn E. Evans,* for appellant.

*Merrick, Hofstedt & Lindsey, H. J. Merrick, Andrew C. Gauen, Williams, Lanza, Kastner & Gibbs, Joseph J. Lanza, Lee, Smart, Cook, Dunlap & Biehl, John F. Biehl,* and *Fred T. Smart,* for respondents.

FARRIS, C.J.—Mary Jo Morrison initiated this action against three physicians alleging that they had committed medical malpractice to her detriment. She appeals from judgment entered on a defense verdict.

On January 11, 1969, Mary Jo Morrison, a bookkeeper, consulted her regular physician, Dr. Emmett F. McKillop, regarding what was soon diagnosed as Bell's palsy, an affliction of unknown cause, medically defined as a swelling of the left or right cranial nerve which results in partial or complete paralysis of the affected side of the face. Dr. McKillop advised her that the paralysis would go away by itself. In fact, however, while a high percentage of reported cases have "gone away," a small percentage have resulted in permanent or partial paralysis. These cases are distinguished from the majority by the occurrence (often at an early stage of the affliction) of nonreversible degeneration of the nerves, Wallerian degeneration. Only electrical stimulation tests can determine whether degeneration is occurring.

Several days after the January 11 visit to Dr. McKillop, Ms. Morrison consulted Dr. Fletcher J. Pomeroy, a neurologist, seeking a second opinion (at the suggestion of her employer, not Dr. McKillop). Dr. Pomeroy conducted an examination but prescribed no treatment and did not perform electrical stimulation tests.

Subsequently, while still seeing Dr. McKillop, Ms. Morrison consulted Dr. Donald E. Stafford, a neurologist, who advised her that she should be taking steroids and

vitamin B–1 and B–12. He also allegedly advised her of a surgical process called decompression surgery, which relieves pressure on those nerve endings which have not degenerated, thereby promoting improved muscle control and nerve function, prerequisites for regeneration and synkinesis.

She continued to see Dr. McKillop, who criticized her for seeking other opinions. She eventually contacted Dr. DeLateur, a professor of medicine at the University of Washington Medical School. Dr. DeLateur examined Ms. Morrison and performed both the electrical stimulation test and an electro–myogram. Both tests indicated that Wallerian degeneration had set in and decompression surgery was done. Ms. Morrison, however, has not completely recovered from the effects of the affliction.

This suit was thereafter brought against all three doctors who had seen Ms. Morrison prior to her treatment by Dr. DeLateur on the theory that they had failed to advise her of the availability of decompression surgery. At trial, she argued that their failure to do so was directly responsible for nerve degeneration which the subsequent surgery could not cure.

The jury was instructed that a doctor

has the duty to inform his patient of other material fact, including . . .

All medically recognized alternate methods of treatment known, or which should be known to the physician.

The nature and probable results of each alternate method of treatment known, or which should be known to the physician.

The material risks and anticipated benefits involved in each method of treatment known, or which should be known to the physician.

A fact is considered material if a reasonable person would attach significance to that fact in deciding whether or not to submit to a form of treatment.

Instruction No. 5, in part. After the jury had retired and deliberated for several hours, they requested a clarification of the phrase "medically recognized alternate methods of

treatment." The court refused this request and the jury was so advised by the bailiff at the court's direction; no formal record of that proceeding was made.

Error is assigned to (1) the failure of the trial court to clarify instruction No. 5 upon the jury's request; (2) the manner in which the trial court communicated to the jury its refusal to clarify the phrase; (3) the use of the term negligence in an instruction which directed a defense verdict on the issue of improper diagnosis and treatment, and (4) the giving of instruction No. 9 which limits the degree of learning and knowledge required by a general practitioner to that held by "reasonably learned and knowledgeable . . . general practitioners."

Ms. Morrison also argues that the court on appeal should find liability against all three defendants as a matter of law and order a new trial limited only to damages.

We have carefully reviewed the record. It reflects that a jury, properly instructed, resolved certain factual disputes in favor of the defendants. There is substantial evidence in the record to support the verdict.

Instruction No. 9 provided:

> A general practitioner has the duty to possess and apply that degree of learning and knowledge possessed by reasonably learned and knowledgeable persons practicing as general practitioners in the profession.
> A specialist has the duty to possess and apply that degree of learning and knowledge possessed by reasonably learned and knowledgeable persons practicing as specialists in the profession.

The court in *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 26–27, 499 P.2d 1, 52 A.L.R.3d 1067 (1972), considered a similar question and concluded:

> Thus, the information required of the doctor by the general rule is that information which a reasonably prudent physician or medical specialist of that medical community should or would know to be essential to enable a patient of ordinary understanding to intelligently decide whether to incur the risk by accepting the proposed treatment or avoid that risk by foregoing it. A doctor or

specialist who fails to discharge this duty to inform would thus be liable as for negligence to the patient for the harm proximately resulting from the treatment to which the patient submitted.

■ The duty of a general practitioner to inform is limited to matters which a reasonably knowledgeable general practitioner should know. Likewise, the duty of a specialist to inform is limited to matters which a reasonably knowledgeable specialist in his field should know. The instruction merely defined the standard of care and thereby provided counsel with a basis for arguing his theory on the failure to disclose cause of action.

■ While not a model of clarity, instruction No. 5 is a sufficient statement of the law to permit each side to argue its theory of the case. Whether a trial court should exercise its discretion and give a clarifying instruction depends on the nature of the clarification sought. A court cannot comment on the evidence and invade the fact finding province of the jury because the jury asks it to. Here, whether decompression surgery is a medically recognized alternative method of treatment was a contested factual issue put before the jury by instruction No. 5. The instruction was clear on its face as to the issue presented. For the court to have instructed on the requisite quantity or quality of medical recognition of decompression surgery under the standard would have been an improper comment on the evidence in violation of article 4, section 16 of the Washington State Constitution.

A better method of notifying the jury would have been for the trial judge to make a written notation on the jury's request form. However, the use of the bailiff to convey the trial court's refusal to further clarify fails to provide a basis for a claim of error when both counsel were present in court

when the court indicated that the bailiff should advise the jury of its position and neither objected to the procedure.

The use of the term "negligent" in directing the verdict on the questions of diagnosis and treatment was not error. The instruction clearly distinguished the causes of action withdrawn and those remaining.

We have considered the argument that the trial court's failure to grant judgment n.o.v. or, in the alternative, a new trial, is error. We find no merit in the argument.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied September 27, 1977.

Review by Supreme Court pending March 3, 1978.